**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

CHARLES BYRD,

                        Petitioner,

-vs-                                                              Case No.  2:08-cv-547-FtM-29SPC

UNITED STATES OF AMERICA,

                        Respondent.
_____/

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

This matter comes before the Court on the Petitioner Charles Byrd's Motion Under 28 U.S.C.

§ 2255 to Vacate, Set Aside or Correct Sentence by Person in Federal Custody (Doc. #1) filed on

July 10, 2008.  The Respondent filed its Response (Doc. #6) on July 16, 2008, requesting that a

hearing be held to determine the validity of the Petitioner's claim.  This matter was referred to the

undersigned by the Honorable John E. Steele on July 21, 2008.  This Court appointed Landon P.

Miller, Esq. to represent the Petitioner for purposes of the hearing which was scheduled for August

28, 2008.  At that hearing, counsel, on behalf of the Petitioner, requested additional time to obtain

the sentencing transcript as well as additional time to consult with the Petitioner.  The hearing was,

therefore, rescheduled for September 11, 2008.  The Petitioner was present with counsel.  The

Respondent was represented by Managing Assistant United States Attorney Douglas Molloy.

At the hearing, the Respondent called Russell Rosenthal, Esq. ("Atty. Rosenthal") as its only

witness and submitted a letter from Atty. Rosenthal to the Petitioner dated July 31, 2008, as

Respondent's Exhibit 1 (Respt. Ex. 1). The Petitioner testified on his own behalf and submitted a memorandum from the Collier County Jail detailing when the Petitioner was in custody and the Petitioner's booking photo from November 2, 2006.

At the close of the hearing, the Petitioner's counsel requested permission to file a supplemental memorandum in regard to the issues alleged by the Petitioner. The Petitioner filed the Supplemental Memorandum (Doc. #23) on September 17, 2008. The Respondent filed the Supplemental Response (Doc. #24) on September 18, 2008. The issues are now ripe for review.

## TESTIMONY and EVIDENCE

**Russell Rosenthal, Esq.**: (Tr. 1-30).

Atty. Rosenthal has been employed as an Assistant Federal Public Defender for the last six and one half (6 1/2) years. (Tr. 5:2). Prior to joining the Federal Public Defender's Office, Atty. Rosenthal was in private practice, which mainly focused on criminal defense, for sixteen (16) years. (Tr. 5:5-6). Atty. Rosenthal was appointed to represent the Petitioner at the underlying criminal trial and at his sentencing hearing on July 23, 2007.

Atty. Rosenthal testified to his representation of the Petitioner at trial and during the sentencing proceedings. He stated that between himself and the Public Defender's Investigator, Mr. Fulgieri, they spent a "good deal of time" with the Petitioner reviewing the evidence and preparing for trial. (Tr. 7:7-14). The Petitioner was convicted at trial in April of 2007 and sentenced by the Honorable John E. Steele, United States District Court Judge in July of 2007. (Tr. 7:18-23).

Atty. Rosenthal testified that under the sentencing guidelines, the Petitioner could have received anywhere in the range of 210 to 240 months as a career offender. (Tr.8:2-9, 13:10-14).

-2-

However, Judge Steele reduced the sentence to 120 months, a number of years below the guidelines, because he felt the Petitioner's record and the quantity of narcotics sold by the Petitioner did not justify the higher incarceration times suggested by the sentencing guidelines. (Tr. 8:4-18).

At the sentencing hearing, the Petitioner informed the Court, on the record, that he wanted to appeal his sentence. (Tr. 8:24-25, 9:1-4)[1].  Therefore,  on July 31, 2007,  Atty. Rosenthal went to the Hardee County Jail in Wauchula, Florida  for the sole purpose of discussing the appeal with the Petitioner. (Tr.9:19-22).  Atty. Rosenthal testified the Petitioner was initially adamant that he appeal the sentencing. (Tr.16:15-23).   Atty. Rosenthal explained to the Petitioner that the sentence was significantly below the sentencing guidelines and cautioned the Petitioner that should he choose to file an appeal, the U.S. Attorney would also file an appeal , which could very well result in a more lengthy sentence. (Tr.9:24-25, 10:1-25). Atty. Rosenthal recalled the discussion lasted for approximately an hour at which time he convinced the Petitioner that an appeal of the sentence would be a mistake that would most likely result in a longer sentence more in line with the sentencing guidelines. (Tr.11:1-12, 16:24-25, 17:1-2).

Atty. Rosenthal testified that his advice was offered and his actions were taken in the best interest of his client. (Tr. 11:13-16).  Atty. Rosenthal stated that, in general, if there is no down side to taking an appeal, then an appeal should be filed. (Tr. 11:16-19).  Conversely, if there is a down side, the issue of appeal should be examined carefully.  In this instance, Atty. Rosenthal testified that there was a down side to taking an appeal. (Tr. 11:19-20).    Therefore, he recommended that the Petitioner not appeal the sentence.  (Tr. 10:22-25).  However, he did make it clear to the Petitioner

[1]The transcript of an excerpt from the sentencing hearing appears at Docket # 25.

that he would file the appeal if the Petitioner so instructed. (Tr. 11:6-8).  In the end, the Petitioner

agreed with Atty. Rosenthal and  indicated he would not  appeal the sentence. (Tr. 11:8-12).

 Because of the nature of the discussions at the Wauchula County Jail and the fact that the

Petitioner had previously stated on the record that he wanted to appeal his case, Atty. Rosenthal sent

the Petitioner a letter summarizing his understanding of the Petitioner's position at the end of their

meeting that he would  not file an appeal of his sentence. (Respt. Ex. 1).  In the letter dated July 31,

2007,  Atty. Rosenthal wrote:

> This letter will summarize our meeting on today's date.
>
> I advised you that the decision as to whether to appeal your conviction and/or sentence is entirely up to you, and if you continue to request an appeal, I would file the notice of appeal for you.  I also advised you that the notice of appeal needed to be filed within ten days of the Judgment.
>
> Although I advised you of this right to appeal, I also made a strong recommendation that you do not appeal.  The basis of this recommendation is that the ten-year sentence imposed by the Court was over seven years below the low-end sentencing guideline range.  While the government objected to the sentence, the prosecutor indicated at the time of the sentencing and in a subsequent conversation, that the government does not intend to appeal the sentence.  However, the prosecutor further indicated that should we appeal, the government's position may change.  I expressed to you my opinion that the chances of the government prevailing in an appeal if the sentence are greater than our chance of reversing your conviction or sentence.  Should the government win an appeal of the sentence, you would be returned to court for the re-sentencing, and would be facing the 210-240 month guideline range.
>
> <u>Based upon our discussions, you advised me not to file the notice of appeal. It was made clear to you that this discussion superceded your statement in court that you wished to appeal.  In other words, I would have filed the notice of appeal based upon your statement in court if you had not told me today that you do not wish to appeal.</u>

(Respt. Ex. 1) (Emphasis in original). Atty. Rosenthal testified that he knew he had to be very clear in his letter that the appeal would not be filed in light of what the Petitioner said in open court. (Tr. 19:15-19).

On cross examination, the issue of identification of the Petitioner was raised as ground two (2) of the Petition.  Ground two (2) alleges that Atty. Rosenthal provided ineffective assistance of counsel for his failure to investigate and obtain a copy of the Petitioner's booking photo from the Collier County Sheriff's Office.  The Photo was taken pursuant to another arrest earlier in the day on November 2, 2006.  Atty. Rosenthal testified that he did not recall getting a copy of the booking photo from the Collier County Jail dated November 2, 2006. (Tr. 22:1-4).  However, Atty. Rosenthal testified that he filed a Motion to Suppress arguing the police photo used to identify the Petitioner prior to his arrest on November 2, 2006, was unduly suggestive. (Tr. 19:12-22). [2]

Atty. Rosenthal also testified that Det. Margie Nelson may have testified during the trial that the individual she purchased narcotics from on November 2, 2006, was described as weighing 150-160 pounds and had a bushy Afro hairstyle. (Tr. 22:5-9).  However, he also stated this was not conclusive to the Petitioner's underlying case since there was more than one incident involved in the Indictment. (Tr.24:5-8).  Atty. Rosenthal stated if he had thought the photo or identification might have made some influence on the jury, he would have used it. (Tr.24:3-5).  Atty. Rosenthal continued that he recalled Det. Nelson testified that although there were several Charles Byrds out there she was referring to the Petitioner. (Tr. 24:17-22).  In addition, there were other law enforcement officers present at the scene on November 2, 2006, who also knew the Petitioner. (Tr.

[2]The District Court adopted the Magistrate Judge's Report and Recommendation and denied the Motion to Suppress . (Doc. # 32).

24:22-25).   An officer who was doing audio surveillance of the transaction, grew up with the Petitioner and was able to identify him by his voice. (Tr. 28:6-10, 25, 29:1-6).  Atty. Rosenthal noted the fact that Det. Nelson testified  the Petitioner was the Charles Byrd she was referring to and that other agents at the scene listening to the audio were also acquainted with the Petitioner and knew him to be Charles Byrd was one of the obstacles he faced during the trial. (Tr. 24:19-25, 25:1-3).

**Charles Byrd:** (Tr.30-50).

The Petitioner took the stand on his own behalf.  He testified that he told Judge Steele that he was going to appeal and  that he told Atty. Rosenthal to file his appeal.  He also testified in regard to ground two of the Petition that he discussed the issue of identification with Atty. Rosenthal prior to trial and that he did not use that information to the Petitioner's advantage and did not investigate fully.

The Petitioner initially testified that Det. Nelson had the wrong identification at the trial. Det. Nelson testified that a man with a bushy Afro sold her the narcotics. (Tr.34:24-25, 35:1-4).  The Petitioner stated that he had kept his head shaved bald since 2002. (Tr.33:6-8).  The Petitioner stated that at trial he gave Atty. Rosenthal a photo of himself which depicted how he looked on the day he was arrested. (Tr. 32:10-12).   He testified that Atty. Rosenthal "put it on the bottom of his stuff."(Tr.32:12-14).   The Petitioner testified that in his pretrial meetings with Atty. Rosenthal he discussed his identification,  his weight, and his appearance on the day he was arrested. (Tr. 32:6-8).

The Petitioner also testified that Atty. Rosenthal disobeyed his instructions to file an appeal of his sentence.  The Petitioner notes that he told Judge Steele at the sentencing hearing on July 23, 2007, that he was going to file an appeal. (Tr. 37:2-5, 10-12).  The Petitioner agreed that Atty. Rosenthal visited him in Wauchula and that they had a discussion regarding his appeal. (Tr.37:22-25,

38:1-4). However, the Petitioner differs on the outcome and the time frame the meeting was held. The Petitioner recalls the Wauchula meeting took place on August 7th or 8th of 2007, after the time for filing an appeal had lapsed. (Tr.37:20-25, 38:1-2). The Petitioner continued that he informed Atty. Rosenthal that he wanted the appeal filed. (Tr. 38:20-22, 39:3-7). The Petitioner acknowledged that Atty. Rosenthal informed him of the consequences of the appeal and he indicated that Atty. Rosenthal did not want to file an appeal. (Tr. 39:14-20). The Petitioner stated  he knew when Atty. Rosenthal came to Wauchula that he came to convince him not to file an appeal. (Tr. 43:4-8). According to the Petitioner, Atty. Rosenthal explained to him that an appeal may not be in his best interest because the U.S. Attorney Malloy would also appeal the sentence. (Tr.38:22-25, 39:1-22). Nevertheless, the Petitioner testified that he was adamant that he wanted to file an appeal even though Atty. Rosenthal informed him that the Government could also appeal, and that he would likely receive more time. (Tr.39:14-22). He stated that he told Atty. Rosenthal over and over again he wanted to file the appeal.(Tr. 39:5-7). The Petitioner stated that Atty. Rosenthal even told his family about the appeal that he could end up with more time if the Government chose to appeal the sentence. (Tr.39:8-13). The Petitioner testified that he felt Atty. Rosenthal did not want to file the appeal. (Tr. 39:14-17). The Petitioner recalls Atty. Rosenthal telling him that if  "You want me to appeal the case?  I appeal it, I do it for you." (Tr.41:8-11, 16-18). The Petitioner testified at the hearing that his final words to Atty. Rosenthal were "well do it then." (Tr.41:11, 19, 42:5-7). The Petitioner testified it was his right to appeal and he wanted to appeal. (Tr.41:6).

The Petitioner said he never received the letter from Atty. Rosenthal that detailed the discussions from their meeting.  (Tr. 42:8-16). The Petitioner further noted that if had, he would have called and told Atty. Rosenthal to file the appeal.   (Tr.42:17-24).

## **DISCUSSION**

There are four grounds for attacking a sentence pursuant to 28 U.S.C. § 2255: first, if it was imposed in violation of the Constitution or laws of the United States; second, if it was imposed without jurisdiction; third, if it was imposed in excess of the maximum authorized by law; and finally, if it is otherwise subject to collateral attack.  U.S. v. Walker, 198 F.3d 811, 813 n. 5 (11th Cir. 1999).  Ineffective assistance of counsel is a cognizable claim under the terms of the statute.

It is well settled that the Supreme Court's ruling in Strickland v. Washington, is the controlling legal standard for determining ineffective assistance of counsel claims. Haliburton, 342 F.3d at 1242. Strickland established a two pronged standard to determine whether or not counsel's assistance was ineffective. 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 674 (1984).  First, the defendant must show that counsel's performance was so deficient that he was not performing as the "counsel" guaranteed by the Sixth Amendment. Id.  Second, the defendant must show that counsels ineffective assistance prejudiced  the defense to such a degree that the defendant was deprived of the right to a fair trial. Id.  The defendant must satisfy both prongs to prove ineffective assistance of counsel. Id.

In his Motion, the Petitioner raises three (3) claims alleging he was denied his Sixth Amendment right to Counsel as follows: (1) Atty. Rosenthal failed to file a notice of appeal after the Petitioner requested it on July 23, 2007; (2) Atty. Rosenthal failed to investigate allowing "officer to make a false statement to the jury"; and (3) Atty. Rosenthal failed to "consult with the Petitioner." The Respondent states that Atty. Rosenthal was told by the Petitioner not to file an appeal and otherwise represented the Petitioner's best interest at trial and during sentencing.

### *(1) Whether Counsel Failed to File an Appeal as Instructed*

In a criminal case, a defendant's notice of appeal must be filed in the district court within ten (10) days after the later of the entry of either the judgment or the order being appealed.  Fed. R. App. P. 4(b)(1).  It is a well settled principle that an attorney who fails to file an appeal on behalf of a client who specifically requests it acts in a professionally unreasonable manner *per se*. Gomez-Diaz v.U.S., 433 F.3d 788, 791-792 (11th Cir. 2005).  Even if a client has not made a specific request of his attorney to file an appeal, a court must inquire whether the attorney consulted with the client regarding the advantages and disadvantages of appealing and made a reasonable effort to determine the client's wishes. Id. at 792.

It is undisputed that the Petitioner initially stated that he wanted to file an appeal.  During the sentencing hearing before the Honorable John E. Steele, United States District Court Judge, the following conversation transpired between the Court and the Petitioner:

Judge Steele:          "Mr. Byrd I would advise you that you do have the right to appeal from judgment and sentence in this case. To do that, you have to file what's called a notice of appeal within ten days of the entry of the judgment.  If you fail to file the notice of appeal within that ten-day period, you waive your right to take an appeal."

"If you wish to appeal, you have the right to be represented by an attorney, and if you cannot afford an attorney, your court appointed counsel will continue to represent you at no cost or obligation to yourself.  Mt. Rosenthal will consult with you, within that ten-day period, to determine whether you wish to file the notice of appeal."

"Do you have any questions about your right to appeal?"

Petitioner:            "No sir. I think we going to appeal."

Judge Steele:          "I didn't hear that last part. I'm sorry.  You say you did or did
                        not?"

Petitioner:            "I said we going to appeal, sir."

(Doc. # 25, 2:24-25, 3:1-18).

At the hearing, the testimony of Atty. Rosenthal was contradicted by the testimony of the Petitioner regarding whether or not Atty. Rosenthal was instructed to file an appeal.  In cases where there is conflicting testimony, the Court must perform a credibility analysis to determine whose testimony is the more credible prior to making a determination on the issue.  When weighing the credibility of a witness, the Court does not look at the status of the witness, but rather the Court must weigh the testimonies of all the witnesses, the consistencies or inconsistencies in their testimonies, their demeanor on the stand and the witnesses' interest in the outcome of the hearing.  U.S. v. Ramirez-Chilel, 289 F.3d 744, 749-750 (11th Cir. 2002).

Atty. Rosenthal testified that he drove to Wauchala on July 31, 2007, for the sole purpose of discussing the Petitioner's plan to appeal. (Tr. 9:19-22).  Atty. Rosenthal felt that an appeal would cause more harm than good based upon that the sentence imposed on the Petitioner was significantly below the sentencing guidelines.  Atty. Rosenthal stated he was acting in the Petitioner's best interest because the Government would appeal and request the Court to impose a harsher sentence. (Tr. 9:24-25, 10:1-25).  He further testified that he did not find any solid grounds for appeal in the case. (Tr.10:2-6).  According to Atty. Rosenthal, the pre-trial motion was resolved on factual grounds and there were no issues at trial that would result in a reversal. (Tr.10:4-9).

Atty. Rosenthal readily acknowledged that when he first arrived at Wauchula the Petitioner was very resistant to his arguments and he still wanted to file an appeal. (Tr.16:15-23). When he left the meeting, after about an hour, the Petitioner had agreed to waive the appeal. (Tr.11:1-12, 16:24-25, 17:1-2). Atty. Rosenthal stated that his belief that the Petitioner did not want to file an appeal was more than just an impression. (Tr. 19:12-19) He stated that due to his dealings with the Petitioner he knew that he had to be "very very clear as to what his intentions were in light of what he had said in court and in light of my view he should not appeal." (Tr. 19:15-19). Atty. Rosenthal's testimony was supported by a letter he wrote and dated July 31, 2007, detailing the agreement reached between himself and the Petitioner. (Respt. Ex. #1).

The Petitioner testified that Atty. Rosenthal did not visit him at Wauchula until the 7th or 8th of August, after the time for an appeal to be filed had expired.  The Petitioner's Counsel asked him if he ever said "[h]ey, you know what, I don't want an appeal." (Tr.40:22-23).  The Petitioner responded "no."(Tr. 40:24).  Petitioner was  asked again: "[O]kay. Did you always tell him you wanted him to do an appeal, if not him somebody else?"  (Tr. 40:25, 41:1).  The Petitioner responded as follows:

> He kept– no, we kept going at it, we kept going at it because when he first ask me, I looked at him, we didn't say nothing each other we just looked at each other, like I'm doing now.  All the sudden he got ready to speak I said no, its my right to appeal my case, man.  He said I know you know what I'm saying, but that's just back and forth back and forth and when he was leaving Wauchula, that's when he looked back and he say you want me to appeal the case. He said, I appeal it, I do it for you.  I say well do it then.  He walked out the door, poker face, going back where he come from.  (Tr. 41:1-12).

 The Petitioner further testified that he  never received any letters from Atty. Rosenthal stating he was not going to file his appeal. (Tr. 42:8-16).  The Petitioner said that had he received

a letter like the letter presented at the hearing, he would have called Atty. Rosenthal and told him

to work with him to try and get him to file the appeal (Tr.42:17-24).

Atty. Rosenthal had nothing to gain by not filing the appeal and, in fact, the Petitioner had

more to lose should an appeal be filed.  While Atty. Rosenthal testified that it was the Public

Defender's Office  general policy to file an appeal, he clearly explained why it was in the Petitioner's

best interest not to file an appeal in this instance.  The Petitioner was subjecting himself to at least

an additional seven (7) years in prison had he not followed Atty. Rosenthal's advice and filed the

appeal.  Atty. Rosenthal supported his version of the meeting with a follow- up letter written on July

31, 2007, the same day the meeting occurred.  In that letter Atty. Rosenthal recorded the result of his

and the Petitioner's conversation.  The letter supports Atty. Rosenthal's version of the conversation.

The Petitioner testified that Atty. Rosenthal did not come to Wauchula until either August

7 or 8, 2007, after the time to file an appeal had passed.  (Tr. 37:20-25, 38:1-2).  It would have been

fruitless for Atty. Rosenthal to discuss the appeal with the Petitioner after the deadline.  When the

Petitioner was asked about Atty. Rosenthal's testimony at the hearing, he was evasive and did not

provide responsive answers, but kept repeating that he wanted to appeal his case.

It was clear from Atty. Rosenthal's testimony that the Petitioner told him not to file an appeal

at the end of their meeting on July 31, 2008.  (Tr. 11:8-12).  It was also clear from Atty. Rosenthal's

testimony knowing  the Petitioner had asked for an appeal on the record in open court,  he knew he

needed to document the Petitioner's change in position . (Tr. 19:15-19).  Therefore, he memorialized

the agreement between the Petitioner and himself in the letter dated July 31, 2007.  Atty. Rosenthal

was well prepared and supported his testimony with documentation in the form of the letter from the

Public Defender's Office files dated July 31, 2007, detailing the meeting between himself and the Petitioner. (Respt. Ex. 1).

Further, the Petitioner waited almost a year before he decided to file a § 2255 motion stating that he wanted to file an appeal. This is a strong indication to the Court that the Petitioner had agreed with Atty. Rosenthal's assessment on July 31, 2007, and waived his right to appeal. If the Petitioner had been adamant that he wanted to assert his right to appeal, then Atty. Rosenthal would have filed the appeal. Atty. Rosenthal testified that it is the usual practice of the Federal Public Defender's Office to file appeals barring some unusual downside like we have in this instance. Atty. Rosenthal had nothing to gain by refusing to file the appeal unless it was agreed to by the Petitioner at that time. Even though the Petitioner stated he attempted to obtain transcripts of his trial, it does not establish the appeals process was started in earnest by the Petitioner nor that the attempt to obtain the transcripts were an attempt by the Petitioner to file a notice of appeal. Thus, based upon the witnesses testimony, the demeanor of the witnesses, and the Court's review of the record, the Court finds the testimony of Atty. Rosenthal more credible than that of the Petitioner.

Having determined that Atty. Rosenthal's testimony is more credible, the Court respectfully recommends the Motion be denied regarding ground one that Atty. Rosenthal provided ineffective assistance of counsel for failing to file an appeal.

### (2) Whether Atty. Rosenthal was Ineffective for not Presenting the Jury With a Copy of the Petitioner's Booking Photo

The Sixth Amendment of the Constitution guarantees criminal defendants the right to effective assistance of counsel. Strickland, 466 U.S. at 687. A convicted defendant making a claim of ineffective assistance of counsel must identify the acts or omissions of counsel that are alleged

not to have been the result of reasonable professional judgement. <u>Chateloin v. Singletary</u>, 89 F.3d 749, 752 (11th Cir. 1996). Then, the Court must determine in light of all the circumstances, whether the attorney's performance was reasonable under the prevailing norms. <u>Haliburton v. Secretary for Dept. of Corrections</u>, 342 F.3d 1233, 1243 (11th Cir. 2003).

In this case, the Petitioner bears the burden of overcoming the presumption that Atty. Rosenthal provided competent and effective assistance of counsel in his defense. <u>U.S. v. Cronic</u>, 466 U.S. 648, 658, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984). Given the strong presumption in favor of competence, the petitioner's burden of persuasion– though the presumption is not insurmountable– is a heavy one. <u>Chandler v. U.S.</u>, 218 F.3d 1305, 1314 n. 15 (11th Cir. 2000) (citing <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 381, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986)).

At the hearing, the Petitioner argued his Sixth Amendment right to effective assistance of counsel was violated because Atty. Rosenthal did not investigate and retrieve a copy of the Petitioner's booking photo from earlier in the day on November 2, 2006, when he was arrested on other unrelated charges. The Petitioner filed, with the leave of the Court, a supplemental brief (Doc. # 23) on September 17, 2008, highlighting his arguments regarding the failure to investigate.

The Petitioner argues the photo could have disputed Det. Nelson's identification of him as the seller because the photo shows him as a 200 pound bald male, while Det. Nelson said the individual who sold her narcotics had a bushy Afro. The Petitioner argues that it is ineffective assistance of counsel on the part of Atty. Rosenthal to fail to investigate what the Petitioner looked like on the day of the narcotic transactions in question in this case.

Under <u>Strickland</u> the Defense Counsel has the duty to make reasonable investigation or make a reasonable decision that makes a particular investigation unnecessary. 466 U.S. at 691. The

Strickland Court held that a particular decision not to investigate must be directly assessed for reasonableness in all of the circumstances, applying a heavy measure of deference to the counsel's judgment. Id.  In determining whether or not the decision to investigate was ineffective, the Court must first determine "whether a reasonable investigation should have uncovered such mitigating evidence." Middleton v. Dugger, 849 F.2d 491, 493 (11th Cir. 1988).  "If so, then a determination must be made whether the failure to put this evidence before the jury was a tactical choice by trial counsel." Id.  If so, such a choice must be given a strong presumption of correctness, and the inquiry is generally at an end. Id. (citing Funchess v. Wainwright, 772 F.2d 683, 689-90 (11th Cir.1985)). If, however, the failure to present the mitigating evidence was an oversight, and not a tactical decision, then a harmlessness review must be made to determine if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Middleton, 849 F.2d at 493.  Thus, it must be determined that Petitioner suffered actual prejudice due to the ineffectiveness of his trial counsel before relief will be granted. Id.

The Petitioner also relies upon Helton v. Secretary for Dept. of Corrections, which found the defense counsel was ineffective for failing to provide gastric evidence at trial that had the potential of being persuasive proof of Helton's innocence. 233 F.3d 1322 (11th Cir. 2000) *vacated* Helton v. Secretary for Dept. of Corrections, 257 F. 3d 1262 (11th Cir. 2001) *(en banc)* (vacated upon other grounds holding that Helton's *habeas* petition was barred as untimely filed and reversing the District Court's order granting the writ),   In Helton, the Eleventh Circuit found that Helton's counsel was not an experienced defense attorney and that his failure to present the gastric evidence fell below reasonable conduct because it presented physical evidence that may have created a reasonable doubt that the Petitioner committed the crime for which he was sentenced.

Contrary to the defense counsel in <u>Helton</u>, Atty. Rosenthal has been a criminal defense attorney for over twenty-two (22) years. (Tr. 5:2-6).   Furthermore, in this case, there was sufficient other evidence presented that identified the Petitioner as the individual who engaged in a narcotics transaction with Det. Nelson.  The Petitioner's identification at the trial came from several different sources.  Atty. Rosenthal testified there were a lot of issues relating to the Petitioner's identification at trial including the fact that the Petitioner was known to several officers at the scene.  One officer who testified knew the Petitioner from childhood and recognized his voice over the audio surveillance. (Tr.24:17-25; 28:6-10, 25; 29:1-6).

Regarding whether or not Atty. Rosenthal should have investigated and obtained the booking photo, the Petitioner himself testified that he had previously given a photo of himself to Atty. Rosenthal. (Tr. 32:10-12).  The Petitioner stated that he actually gave Atty. Rosenthal a copy of the booking photo in the courtroom and that Atty. Rosenthal took the photo and placed it "at the bottom of his stuff." (Tr. 32:10-14).  Thus, it can be argued that the decision on whether or not to investigate and use the Petitioner's booking photo to refute Det. Nelson's testimony and identification was a tactical one made by Atty. Rosenthal at that time.  However, even if Atty. Rosenthal's failure to present the photo evidence was an oversight on his part, it was clearly established and unrefuted that other officers besides Det. Nelson knew the Petitioner by sight and by his voice on the audio surveillance and identified him at trial. Furthermore, Det. Nelson previously testified at the Petitioner's Motion to Suppress hearing that she knew the Petitioner personally.  Therefore, the Petitioner failed to show that even if Atty. Rosenthal's acts had proven to be ineffective, that he would have been prejudiced at trial to such a degree that his right to a fair trial would have been violated.

When viewing the circumstances surrounding the Petitioner's arrest and identification at trial by other officers who knew him, the Petitioner clearly fails to establish ineffective assistance under Strickland's well established criteria.  466 U.S. at 687 (holding the Respondent must show that counsel's ineffective assistance prejudiced the defense to such a degree that the Respondent was deprived of the right to a fair trial).  Therefore, the Court respectfully recommends the Petitioner's assertion that Atty. Rosenthal acted ineffectively by not investigating the Petitioner's booking photo from the Petitioners prior arrest on November 2, 2006 should be denied.

### (3) Whether Atty. Rosenthal Failed to Consult with the Petitioner

The Petitioner's third claim alleges that Atty. Rosenthal provided ineffective assistance of counsel because he failed to consult with him.  The Petitioner bears the burden of overcoming the presumption that Atty. Rosenthal provided competent and effective assistance of counsel in his defense. Pelham v. U.S., 2006 WL 3020077 * 5 (M.D. Fla. October 9, 2006) (citing U.S. v. Cronic, 466 U.S. 648, 658, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)). "Given the strong presumption in favor of competence, the petitioner's burden of persuasion-though the presumption is not insurmountable-is a heavy one." Chandler, 218 F.3d at 1314 n. 15. (citing Kimmelman, 477 U.S. at 381).

The Petitioner did not presented no testimony or argument at the hearing regarding the allegation that Atty. Rosenthal did not consult with him prior to the trial.  Atty. Rosenthal testified that he went over the evidence with the Petitioner prior to going to trial.   Atty. Rosenthal further testified that between himself and Mr. Fulgieri, the investigator for the Public Defender's Office, they spent a "good deal of time" with the Petitioner. (Tr.7:7-14).

Attorney's are not required to be at the defendant's constant call.  It is clear from Atty. Rosenthal's testimony that he and/or his investigator had spent considerable time with the Petitioner.

The Petitioner did not refute that testimony, but instead, testified that he had to give Atty. Rosenthal his "props" and that he had a great deal of respect for Atty. Rosenthal. (Tr. 43:4-12). The Petitioner failed to provide any support for his allegation that Atty. Rosenthal failed to consult with him prior to the trial and he further failed to present any evidence that such failure prejudiced him at trial. Therefore, the <u>Strickland</u> criteria for ineffective assistance of counsel have not been met. Consequently the Court respectfully recommends the Petitioner's § 2255 Motion should be denied.

Accordingly, it is now

**RESPECTFULLY RECOMMENDED:**

The Petitioner Charles Byrd's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by Person in Federal Custody (Doc. #1) should be **DENIED.**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Respectfully recommended** at Fort Myers, Florida, this   2nd   day of October, 2008.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record